**Hugh CLEMMONS, Lawrence Higdon, E. W. Agger, Trustees for the Higdon Christian Church, Plaintiffs-Respondents,**

**v.**

**R. P. SMITH, Otto Combs, and Ethel Combs, Alleged Trustees for the Congregation of the Disciples of Christ Church at Higdon, Missouri, The Missouri Association of Christian Churches, Inc., and Higdon Christian Cemetery Association (Disciples of Christ), Defendants-Appellants.**

**No. 50318.**

Supreme Court of Missouri,

Division No. 1.

June 8, 1964.

R. P. Smith, Cape Girardeau, for appellants.

Roberts & Roberts, by Raymond R. Roberts, Farmington, for respondents.

HENRY J. WESTHUES, Special Commissioner.

This is an action to quiet title to certain real estate located in Madison County, Missouri. Plaintiffs-respondents are Hugh Clemmons, Lawrence Higdon, and E. W. Agger, Trustees for the Higdon Christian Church. Defendants-appellants are R. P.

Smith, Otto Combs, and Ethel Combs, Alleged Trustees for the Congregation of Disciples of Christ Church at Higdon and The Missouri Association of Christian Churches, Inc., a corporation, and Higdon Christian Cemetery Association (Disciples of Christ).

Plaintiff trustees claim title by virtue of a deed executed in the year 1890 whereby the property in question was conveyed to certain named trustees "in trust for the use and benefit of the Congregation of Deciples of Christ at Higdon Chapel Missouri and their successors in office." It is admitted that the above deed of 1890 is the common source of title.

The defendant Missouri Association of Christian Churches, Inc., claims title by virtue of a deed executed by the defendant trustees who claim they represented the congregation at Higdon.

■ A trial resulted in a decree for plaintiffs on the theory that the deed executed by the defendant trustees was a nullity. Defendants appealed to this court. Title to real estate being involved, jurisdiction is vested in this court.

The evidence disclosed that the Higdon congregation was not large and the members attending Sunday services numbered about 50. A small building was used as a church edifice until about 1958. The evidence does not reveal any dissension among the members until a short time prior to 1955 when the congregation voted to remodel the old church building. Repairing the old building did not prove to be satisfactory. In 1955, the congregation voted to construct a new church building. The old location was deemed to be inadequate and some of the space surrounding the building had been used for a cemetery. The new church was constructed by voluntary labor donated by the members of the congregation. Material was purchased and a furnace was installed. These two items were about all of the expense the congregation incurred.

It is evident that the question of building a new church was the cause of the dissension. When the basement of the new building was completed, it and the old church were both used in connection with church activities. Since the building was constructed by voluntary labor, progress was rather slow. It was about two or three years before the building was completed. In 1958, the building was completed and much of the equipment in the old building was transferred to the new church. Thereafter, the old church building was used, for the most part, as a storeroom. However, a small group refused to go to the new church building, claiming that those going to the new building had in fact abandoned some of the practices of faith of the "Disciples of Christ"; that the new group was not "Deciples of Christ" but the members thereof were known as "Independent Christian Church." This claim of the defendants, that is, the defendant trustees, was not supported by the evidence. The defendant Missouri Association of Christian Churches, Inc., made no such claim. A number of ministers who were connected with that corporation, in testifying, explained the difference in the various groups, that is, the "cooperative group" and the "independent group."

Dr. Lester Richman, General Secretary of the Missouri Association of Christian Churches, Inc., testified as follows:

"Q Mr. Richman, there has been a discussion here with reference to the two different groups or possibility of two different groups, one referred to as the Christian Church Disciples of Christ and the other as the Independent Christian Churches. Are you familiar with those two groups?

"A Yes.

"Q Can you explain to the Court the difference between the two groups?

"A Well, the Christian Church Disciples of Christ, those who belong to this group, co-operate through district,

state, and national organizations and make reports regularly to what we call the Yearbook of the International Convention of Christian Churches Disciples of Christ. Those churches which we call Christian Churches Independent do not co-operate through these organizations. Neither do they make a, at least most of them do not make a report, voluntary report to the Yearbook of the International Convention of Christian Churches Disciples of Christ. They have a separate book which they call a Directory of the Ministry, Nondenominational, I believe this is its official title."

On cross-examination, the following testimony was elicited from Dr. Richman:

"Q  * * *  Now, Dr., I'm going to read you a definition and I want to ask you if you agree with it. In its generic sense the term, 'Christian Church' is the phrase we are defining, in its generic sense the term embraces all those who profess the religion of Jesus Christ. Specifically the term may, according to the context, identify a certain great religious denomination and numerous congregations known interchangeably as the Christian Church, the Church of Christ and Disciples of Christ, do you agree with that?

"A  Historically this would be correct.

"Q  And it is interchangeably in that?

"A  Yes.

*  *  *  *  *  *

"Q  Dr., when was the general or the Missouri Association of Christian Churches formed?

"A  Well, the specific name as now used was formed about 1958; however its predecessor the Missouri Christian Missionary Society was started in May of about 1864 in Chillicothe, Missouri. The Missouri Association of Christian Churches is now one organization which encompasses several different ones which weren't working before so as to do—

"Q  It's a charitable corporation?

"A  (Witness nodding his head up and down.)

"Q  Is it incorporated?

"A  It is incorporated."

Other ministers testified substantially to the same effect, that is, that the terms "Christian Church" and "Disciples of Christ" are terms that may be used interchangeably. No substantial evidence was offered that there had been any change in the practices of faith in the church at Higdon since its organization to the time of the trial.

In May, 1962, five or six people gathered at the home of Etta McClarney at Knob Lick, St. Francois County, Missouri. Without any notice to anyone except these persons, the defendant trustees, R. P. Smith, Otto Combs, and Ethel Combs, were elected as alleged trustees of the Higdon congregation. These so-called trustees in turn executed the deed purporting to convey the real estate in question to the defendant corporation.

The root of the dissension may be found in the evidence given by defendant Otto Combs. He testified that he had been a member of the Higdon church for many years; that he was a deacon when the congregation voted to remodel the old church. However, he was not present when the vote was taken to construct a new building. At that time Mr. Combs was elected as a trustee. The duties of a trustee apparently disturbed Mr. Combs. Note his evidence:

"A  Well, they was wanting me to sign a note for the new building. I was, uh, they appointed me or elected me as something, a Trustee.

"Q  All right.

"A  And I wasn't present when they appointed me a Trustee and wasn't con-

sulted or anything about the new building but they did, did want me to sign a note for a mortgage on the new building. And I told them I guessed I'd have to resign. I didn't put myself in, they put me in there. And we had quite a conversation at that particular time."

On cross-examination, Otto Combs gave the following testimony:

"Q All right. Now, what changes have taken place in the basic beliefs of the people of the Higdon Christian Church since the building has changed?

"A Well, I guess they all believe in the Bible; if they don't they should, if they don't want to go to hell.

"Q Well, can you think of any change that has taken place? You said there was a change. What change?

"A Well, they just got away from the old church that we was used to.

 *　*　*　*　*　*

"Q All right. What organizations or what groups have been controlling the Higdon Christian Church since 1930's?

"A Well, it, uh, that little church has never been like a big, modern church in the city. It's been ruled by very poor people and all the way down through the history and I'm just trying to defend what my forefathers and everybody else that founded church to keep it Disciple of Christ like the deed calls for at right in the Courthouse at Fredericktown and everything.

"Q Thank you. I think that's very admirable, sir, and I want you to defend it. But I want you to tell me how it's changed? Now, we've changed the building?

"A Well, people maybe hasn't changed, I don't know.

"Q Well, has their practices or their faith changed in any way?

"A Well, I don't guess there's too much change, no.

"Q All right, sir. Now, you had a meeting back in May of 1962 in which you organized a new church, didn't you? Well, you elected Trustees, didn't you?

"A Yeah.

"Q And lets see if there was anybody—Was there anybody present there besides members of your family and Mrs. McClarney and Mrs. Penberthy?

"A Nope."

It is apparent that the deed executed by the defendants, purporting to represent the Higdon congregation, is a nullity.

■■■ The plaintiff trustees, as the evidence showed, are the true trustees of the Higdon Christian Church. It is immaterial whether the church be referred to as the "Christian Church" or "The Disciples of Christ Church" or as "Independent Christian Church." The evidence conclusively showed that the members of the congregation at the time of trial were of the same faith as they were in the year 1890 when the property was deeded to the congregation. There was no division within the meaning of the law so as to justify a forfeiture. 76 C.J.S. Religious Societies § 70, pp. 847–849.

The decree of the trial court was for the right parties and should be and it is hereby affirmed.

PER CURIAM.

The foregoing opinion by WESTHUES, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur except HENLEY, J., not sitting.